# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Randolph J. Grabowski, | : | Case No. 1:02CV1153 |
| | : | |
| Plaintiff | : | |
| | : | Magistrate Judge David S. Perelman |
| v. | : | |
| | : | |
| SBC Ameritech Corporation, | : | |
| | : | **MEMORANDUM OPINION** |
| Defendant. | : | |

Currently pending is the motion of defendant SBC Ameritech Corporation ("SBC") for judgment on the administrative record.

Although this case was filed by plaintiff, Mr. Randolph J. Grabowski, on behalf of himself as well as those similarly situated, under Section 301 of the Labor Management Relations Act, 29 U.S.C. §185(a), alleging violation of the collective bargaining agreement between his employer, SBC, and his union, the Communications Workers of America ("Union"), he failed to file a motion to certify the class and, therefore, proceeds as the sole plaintiff.

Plaintiff began his employment with SBC in 1967 as a mailroom employee and worked his way up to the position of Central Office Technician, which he held from the late 1970s until his retirement in 1994.

1

During the course of his employment, he was a member of the Union, which had entered into a collective bargaining agreement ("CBA") with The Ohio Bell Telephone Company, which later became SBC.

The CBA contained Article 36, a provision creating a Supplemental Income Protection Program ("SIPP") under which SBC had the discretion to declare a surplus of employees in any job title, organization or work location. Once a surplus was declared, this provision could be implemented to relieve it by allowing designated employees to agree to receive severance payments and benefits to encourage them to leave the workforce. SBC retained the authority to determine the number of surplus employees in each job title, work group or location who would be offered SIPP benefits and the date each employee would leave service. Article 36 stated in pertinent part:

ARTICLE 36
Supplemental Income Protection Program

* * * * *

> Section 2. If during the term of this agreement, the Company notifies the Union in writing that technological change (defined as changes in equipment or methods of operation) has or will create a surplus in any job title in any organization in a work location, which will necessitate layoffs or involuntary permanent reassignments of regular employees to different job titles involving a deduction in pay or to work locations requiring a change of residence, or if a force surplus necessitating any of the above actions exists for reasons other than technological change and the Company deems it appropriate, employees in the affected job title, organization and work locations may elect, in the order of seniority, and to the extent necessary to relieve the surplus, to leave the service of the Company and receive Supplemental Income Protection benefits described in this Article subject to the following conditions:
>
> (a) The Company shall determine the job titles, organizations and work locations in which a surplus exists, the number

2

> of employees in such titles, organizations and locations who are considered to be surplus, and the period during which the employee may, if the employee so elects, leave the service of the Company pursuant to this Article. Neither such determinations by the Company nor any other part of this Article shall be subject to the grievance procedure.
>
> (b) The number of employees who may make such election shall not exceed the number of employees determined by the Company to be surplus.
>
> (c) An employee's election to leave the service of the Company and receive Supplemental Income Protection benefits must be in writing and transmitted to the Company within 30 days from the date of the Company's offer in order to be effective, and it may not be revoked after such 30-day period.

\* \* \* \* \*

On April 15, 1994 SBC announced such a surplus, which called for employees within certain organizations of SBC in each of five states to be offered SIPP benefits in accordance with Article 36. Plaintiff received a copy of that announcement, which provided that eligible employees could choose between a Pension Plan 3+3 Enhancement Program, which added three years of age and three years of service to an employee's pension eligibility, or the SIPP. While *all* employees were eligible for the Pension Plan 3+3 Enhancement Program, only employees who fell within the group designated by SBC (and who also elected the SIPP program) could receive SIPP benefits.

As part of this initiative, SBC determined which work groups would be affected and the number of employees in each group who were considered to be surplus. Then the specific employees within that group who were to receive SIPP benefits were selected according to seniority within the specific job,

3

organization or location.

Employees were provided with an information packet which included an explanatory letter, answers to frequently asked questions and an acknowledgment form that was to be submitted by the employee no later than May 16, 1994.

Upon receipt of his SIPP information packet, plaintiff read, filled out, edited and signed the SIPP Acknowledgment Form to elect to participate in the SIPP program. He submitted the form to his supervisor, Mr. Dave Donner, on April 27, 1994. Plaintiff received a postcard from his employer informing him of the receipt of his form and that he would "be notified by June 3, 1994 *if your election is approved*." (Emphasis added.) That notification never arrived.

Instead, in September or October of 1994 plaintiff saw a list posted at his work location of employees who had elected to receive SIPP benefits, with the names of those employees appearing in order of descending seniority. Employees whose names appeared above the red line delineating where the benefits were cut off would receive benefits, whereas those employees (including plaintiff) listed below the red line would not. In plaintiff's workgroup, S115, only the 56 most senior employees who elected to receive SIPP benefits were in the group designated to receive those benefits. Plaintiff was the 76th most senior applicant, resulting in the denial of benefits to him.

Approximately two months after learning that he had been denied SIPP benefits, plaintiff notified his employer of his intent to retire from employment, effective December 30, 1994. He retired with a full-service pension and received the 3+3 Pension Plan Enhancement, opting to take his pension in a lump sum payment slightly in excess of $236,000.

On June 18, 2002, plaintiff filed the instant cause of action claiming that he had been arbitrarily

4

denied SIPP benefits.

Plaintiff's complaint of breach of contract, while couched as a cause of action under Section 301 of the Labor Management Relations Act, in reality raises the issue of whether he is entitled to SIPP benefits, which would constitute a claim under the Employees' Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq., not Section 301.

Under ERISA, 29 U.S.C. §1132(a), a civil action may be brought:

> (1) by a participant or beneficiary –
> (A) for the relief provided for in subsection (c) of this section, or
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....

That action could only be brought if the SIPP is deemed an "employee benefit plan."

> ERISA says that an "employee benefit plan" may be an "employee welfare benefit plan" or an "employee pension plan." 29 U.S.C. §1002(3). An "employee welfare benefit plan" is "any plan, fund or program...established or maintained by an employer...for the purpose of providing for its participants...benefits in the event of...unemployment" (among other types of benefits) or "any benefit described in section 186(c) of this title [a provision of the Labor-Management Relations Act]." 29 U.S.C. §186(c)(6). Shahid v. Ford Motor Co., 76 F.3d 1404, 1409-10 (6th Cir. 1996); Adams v. Avondale Indus., Inc., 905 F.2d 943, 947 (6th Cir. 1990).

Reedstrom v. Nova Chemicals, Inc., 96 Fed.Appx. 331, 334-45, 2004 U.S. App. LEXIS 8314 (6th Cir. 2004).

In Reedstrom, a plan similar to the SIPP in the present case was deemed to be an employee welfare benefit plan under ERISA where it was implemented during restructuring of the company and

5

offered employees "various career options such as early retirement, leaves of absence and part-time work schedules," so as "to reduce the need for lay-offs." Reedstrom, supra at 333. An employee who qualified for the program could receive severance pay. The plan included the need for ongoing administration in order to "'analyze each employee's particular circumstances in light of the appropriate criteria' for eligibility set forth by the company." Reedstrom, supra at 335, citing Sherrod v. General Motors Corp., 33 F.3d 636, 638 (6th Cir. 1994). The employer exercised discretion in determining which business divisions were in need of reductions and which employees were eligible to participate. Ibid.

Similarly, the SIPP in this case is an employee welfare benefit plan which required discretionary decision making, severance pay for qualifying employees, and ongoing administration of the plan.[1]

Having so determined, the issue becomes whether the denial of SIPP benefits to plaintiff violated ERISA.

The United States Supreme Court has clarified the issue as to the standard of review to be applied to benefits determination decisions challenged under ERISA by holding, "a denial of benefits under [ERISA] §1132(a)(1)(B) must be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

If, as in the present case, the plan language (as articulated in the CBA) clearly grants the fiduciary

---

[1] The same conclusion was reached in two earlier decisions. In the first, decided by former Chief Judge George White of this district court, Ameritech's 1994 SIPP was deemed to be an ERISA employee welfare benefit plan. Burton v. Ohio Bell Telephone Co., d/b/a Ameritech, Case No. 1:95CV1409 (N.D.Ohio). In the second, Lavelle v. Michigan Bell Telephone Co., 1998 U.S.Dist. LEXIS 7875 (W.Dist. Mich. 1998), the SIPP was deemed to be an employee welfare benefit plan in light of the fact that the employer had discretion to determine where there was a need for reductions and the time during which employees were able to leave.

full discretion to construe its terms then this Court must review deferentially a denial of benefits challenge such as is raised herein.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  The decision of a plan fiduciary may only be overturned if it was arbitrary and capricious, which has been defined as not "rational in light of the plan's provisions."  Henderson v. Ameritech Corp., 27 Employee Benefits Cases (BNA) 1514, 2001 U.S.App. LEXIS 27181, *16 (6th Cir. 2001), quoting Smith v. Ameritech, 129 F.3d 857, 863 (6th Cir. 1997).  See also, Kent v. United of Omaha Life Insurance Co., 96 F.3d 803, 806 (6th Cir. 1996); Leahy v. Trans Jones, Inc., 996 F.2d 136, 139-40 (6th Cir. 1993) and Miller v. Metropolitan Life Insurance Co., 925 F.2d 979, 983 (6th Cir. 1991).  This standard has been described as "the least demanding form of judicial review of administrative action...When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious."  Henderson v. Ameritech Corp., supra, quoting Killian v. Healthsource Provident Administrators, Inc., 152 F.3d 514, 520 (6th Cir. 1998).  The decision of the fiduciary must be upheld provided that it is "the result of a deliberate principled reasoning process, and if it is supported by substantial evidence."  Ibid.

In order to evaluate the decision of the fiduciary, this Court may only look to the evidence before the fiduciary at the time of the benefits denial.  Id. at *17, citing Smith v. Ameritech, supra at 863 and 900 F.2d 963, 966 (6th Cir. 1990).  See also, Miller v. Potok, 72 F.3d 1066, 1070 (2nd Cir. 1995); Lee v. Blue Cross/Blue Shield, 10 F.3d 1547, 1550 (11th Cir. 1994); Taft v. Equitable Life Assurance Society, 9 F.3d 1469, 1471 (9th Cir. 1993); Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 48, n.8 (3d Cir. 1993); Sandoval v. Aetna Life & Casualty Co., 967 F.2d 377, 380-81 (10th Cir. 1992) and Oldenburger v. Central States Pension Fund, 934 F.3d 171, 174 (8th Cir. 1991).

It follows that when a denial of  benefits determination is challenged in federal court and the

deferential standard applies, the fiduciary/decision-maker may not assert a defense which was not relied upon as a basis for denial during the administrative process. Mitchell v. First Unum Life Insurance Co., 65 F.Supp.2d 686, 696 (S.D.Ohio 1998).

Applying the foregoing to the present case, the decision to deny plaintiff SIPP benefits cannot be deemed arbitrary and capricious, as it was the result of defendant having determined, as it was the employer's right to do, that there 56 surplus employees in plaintiff's work group and, therefore, that only the 56 most senior employees who filed elections would receive the SIPP benefits. Plaintiff has offered no evidence to refute the number of surplus employees. There is no indication that in reaching its determination as to the number of surplus employees the employer violated the terms of the collective bargaining agreement or the terms of the SIPP. The mere receipt of the form indicating an employee's election to receive SIPP benefits was not a binding agreement that those benefits would be granted to the employee, as it was made clear that the SIPP elections were subject to approval and that not all employees would receive those benefits. Consequently, the decision of SBC to deny SIPP benefits to more than the 56 most senior employees who elected to receive those benefits was the result of a deliberate principled reasoning process, and is hereby upheld.

In light of the foregoing, the motion of SBC for judgment on the administrative record will be granted.

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE: May 4, 2005